[No. 21246.    Department Two.    December 13, 1928.]

*In the Matter of the Estate of* JOSEPH M. POMPAL,
*Deceased.*

LOUISE POMPAL *et al., Respondents,* v. F. L. JEWETT,
*Appellant.*[1]

[1]Reported in 272 Pac. 980.

*Solon T. Williams* and *Abe Spring,* for appellant.
*Smith & Matthews,* for respondent.

FULLERTON, C. J.—One Joseph M. Pompal died on October 22, 1925. At the time of his death, he was a resident of Seattle, in King county, state of Washington, and left an estate therein consisting of money on deposit in a bank. He also left an estate, consisting in part of real property and in part of personal property, situated in and near the town of Circle, in the territory of Alaska. The decedent left a wife, but no issue. It appears that he and his wife had become estranged, and, for some four years prior to his death, had lived separate and apart. During this period the wife resided in the dominion of Canada, and it is not shown that she at any time resided within the state of Washington.

The decedent left a will in which he purported to dispose of all of his property. He bequeathed and devised to his wife all of the property situated in Alaska, and five hundred dollars in money. The remainder of his property he bequeathed to his collateral heirs, making his sister the residuary legatee. He named the respondent Louis Budwick as his executor, who in due time caused the will to be probated, and himself confirmed as such executor.

The appellant, F. L. Jewett, held an obligation of the decedent, in the form of a promissory note. This he duly presented to the executor as a claim against the estate. The executor rejected the claim, and the appellant brought an action thereon and obtained a judgment establishing it as a claim. This judgment was

affirmed on an appeal, *Jewett v. Budwick,* 145 Wash. 405, 260 Pac. 247.

Later on, the wife, as the surviving spouse, petitioned the court to award and set off to her property of the estate to the extent of three thousand dollars, pursuant to § 1473 of the Code (Rem. Comp. Stat.). It appeared that such an award, if made, would practically exhaust the property of the estate, leaving insufficient funds to pay the appellant's claim. The appellant thereupon appeared and resisted the petition, questioning the right of the wife to the award. A hearing was had thereon, at the conclusion of which the court entered an order in accordance with the petition of the wife. It is from this order that the appeal before us is prosecuted.

■ As a preliminary question, the respondents contend that the appellant, being only a creditor of the estate, is not in a situation which will permit him to question the award made to the wife. But we think the objection untenable. If the award made the wife left sufficient property in the hands of the executor to satisfy the appellant's claim, then doubtless he would be precluded from objecting to it, whether it was right or wrong, on the ground of want of interest. But here he is materially affected by the order. As we have said, it leaves insufficient funds out of which his claim can be satisfied, and manifestly a creditor of an estate has such an interest therein as will enable him to question orders the effect of which is to leave his claim unsatisfied. See 24 C. J. 272, 388.

■ The appellant first contends that the wife, since she was living in a foreign jurisdiction separate and apart from her husband, cannot claim under the cited provisions of the statute. But we think our cases of *In re Lavenberg's Estate,* 104 Wash. 515, 177 Pac. 328, and *In re Johnson's Estate,* 114 Wash. 61, 194

Pac. 834, conclude the question against him. Neither of these cases, it may be true, involved the element of living separate and apart, but the grounds upon which the decisions were rested indicate clearly that this is not a material consideration. The court based the right squarely upon the terms of the statute. It was held that the statute gave the right to the surviving spouse, subject only to the exceptions therein provided, and that it was sufficient to entitle the spouse to the right to show a lawful existing marriage and that the exceptions the statute imposed were nonexistent. Living separate and apart, it will be noted, is not a statutory disqualification.

The principal question presented by the record is the status of the property involved. The statute provides that the award shall not be taken from the separate property of the deceased, where the property is disposed of by will, and there is no minor child living as the issue of the surviving spouse and the deceased. In this instance, as we have pointed out, the property was disposed of by will, and there was no living issue of the marriage, and if the wife is entitled to the award it must be because the property in this state was the community property of the spouses.

To show the source of the money forming the property of the estate which is subject to administration in this state, the appellant sought to take the depositions of certain witnesses residing at Tacoma. The notice given to the opposing party of the intent to take the depositions, while sufficiently formal and regular in other respects, did not state the names of the witnesses whose depositions it was desired to take, but referred to them under the general designation of "sundry witnesses". Pursuant to the notice, the deposition of a witness was taken at the time and place appointed. When the deposition was offered in evi-

dence, the court, on motion of the opposing party, suppressed it and refused to allow it to be read.

In *Donaldson v. Winningham*, 54 Wash. 19, 102 Pac. 879, we held that a deposition should be suppressed unless the notice of the taking of the deposition contained the names of the witnesses sought to be examined. The present case, however, presents a condition not present in the cited case. Here the opposing party appeared by his representatives at the place of the examination, and cross-examined the witness without objection on the ground of the insufficiency of the notice, while in the cited case no such appearance was made. The authorities generally recognize that this forms an exception to the general rule. In Greenleaf's Evidence (16th ed.), § 163b, it is said:

"The whole object of the notice being the opportunity to cross-examine, the deposition is receivable if there was an actual cross-examination or an attendance for it, even though the notice was formally defective."

In 18 C. J. 661, § 148, it is laid down as a general rule that an objection to deposition on the ground of lack of legal notice cannot be made after appearance and cross-examination by the opposing party to the action or by his legal representative.

In Jones' Commentaries on Evidence (2nd ed.), § 1995, speaking of the notice to take deposition, the author uses this language:

"If a party or his attorney appears and cross-examines a witness, this is a waiver of all defects in the notice or of the fact that no notice has been served. This rule rests on the general ground that, when a person avails himself of the privileges which a notice is designed to give, he ought not to be heard to object that he has had no notice."

Many cases are cited in support of the texts, and these show that the exception to the rule is as well

recognized as the rule itself. Our conclusion is therefore that the trial court erred in suppressing the deposition.

■ Treating the deposition as properly in the record, as we must, it shows that the money which comprised the estate of the decedent in this state was obtained from the sale of hides of fur-bearing animals, which the decedent trapped in the Northwest Territories of Canada during the years 1925 and 1926. These the decedent shipped from the territories mentioned to a firm at Tacoma, in this state, where they were sold and the proceeds of the sale held for the use of the shipper until he returned to the state, when they were turned over to him.

Had the animals been trapped in this state, the proceeds received for their hides would have been the community property of Pompal and his wife. Since our rule is that the laws of a foreign jurisdiction are presumed to be the same as our own, it would follow that, in the absence of a contrary showing, we would conclusively presume that such proceeds were the community property of the spouses, notwithstanding the place of their acquisition.

But to overcome the presumption, the appellant put in evidence a printed copy of the statute laws of the Northwest Territories of Canada, purported to have been published under the authority of the governing body of those territories. These show that the property rights of a married man in personal property are substantially as they existed under the common law; that a community interest in such property, as that character of interest is recognized in this state, is not there recognized, but that personal property there acquired by a man during the marital relation is what would be denominated in this state separate property.

██ We have not overlooked the respondent's objection that the laws of the Northwest Territories of Canada were not admissible in the form offered. The trial court overruled an objection to their admissibility at the trial, and it may be that the objection is not now open to the respondents. But passing the question, we are clear that the court committed no error in this respect. By our statute (Rem. Comp. Stat., § 1259) it is provided that printed copies of the statute laws of any state or territory, or foreign government, if purporting to have been printed on the authority of such government, shall be admitted in all courts of this state as presumptive evidence of such law. For a collection of the cases showing applications of the rule, see the editorial note to *Rudolph Hardware Co. v. Price,* 164 Iowa 353, 145 N. W. 910, 1916D Ann. Cas., p. 850.

Our conclusion is that the trial court erred in allowing the award to the respondent widow to have precedence over the claim of the appellant. Its judgment therefore is reversed, and the cause is remanded with instructions to disallow the award in so far as it affects such claim.

MAIN, HOLCOMB, and BEALS, JJ., concur.