Argued 30 March, decided 18 April, 1904.

**FROEBRICH *v.* LANE.**

[76 Pac. 351.]

EQUITY JURISDICTION TO SET ASIDE FINAL PROBATE ORDERS.

1. A court of equity has jurisdiction to set aside a decree of a county court approving and settling the final account of an administrator, procured by fraud, notwithstanding Section 911, B. & C. Comp., giving the county court exclusive jurisdiction, in the first instance, to conduct and settle the accounts of adminis-

trators. This remedy, however, cannot be used to correct errors or irregularities, or to escape the results of neglect.

REMEDY AT LAW—MISTAKE—EXCUSABLE NEGLECT.

2. The right to relief in equity against a decree of the county court procured by fraud is not affected by Section 103, B. & C. Comp., providing for relief of a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect, where the remedy therein provided has not been invoked.

FINAL ORDER REVIEWABLE IN EQUITY.

3. A decree approving and settling the final account of an administrator is such a final order as may be set aside in equity for fraud, though the property or fund has not been distributed nor the administrator discharged.

EXAMPLE OF FRAUD IN PROBATE SETTLEMENT.

4. Where an administrator and heirs of the decedent entered into an agreement limiting the administrator's compensation, but notice of the hearing for settlement of his account was published in an obscure part of a paper in fine type, and the administrator concealed from the heirs the fact that his final account had been filed, and he therein charged more for his compensation than had been agreed, there was such fraud in procuring a decree settling the account as to authorize a court of equity to set it aside.

LACHES IN COMMENCING SUIT.

5. A delay of eight months in beginning a suit after receiving knowledge of the facts relied upon is not a fatal delay.

From Marion: REUBEN P. BOISE, Judge.

This is a suit by David Froebrich and others against D. F. Lane, personally and as administrator, to set aside an order and decree of the county court of Marion County, made and rendered in the matter of the estate of Emanuel Froebrich, deceased, November 24, 1902, settling and allowing the final account of the administrator, the defendant herein. The deceased left an estate valued at $3,935. Plaintiffs are his heirs, and, being citizens of the Empire of Germany, have been represented by C. V. Wintzingerode, Imperial German Consul at Portland, Oregon, and O. Lohan, his successor, who were authorized to act for and represent them in the matter of said estate by power of attorney, as well as by their attorneys in this proceeding. After stating the foregoing facts, the complaint continues in brief, that, after letters of administration were granted to defendant, one John Rieger, a creditor of decedent, instituted a proceeding for the revocation of such letters, and to secure his own appointment as adminis-

trator; that pending such contest, and while the same was on appeal, to wit, about April 26, 1902, the matter was compromised between the defendant on the one part and Rieger and these plaintiffs on the other, whereby it was agreed that the contest should be discontinued and abandoned, and defendant allowed to continue his administration and settle the estate, and that defendant in settling the same would not claim or charge any greater sum for counsel or attorney fees than $300, and would not demand any extra compensation for his own services; that, in pursuance of the agreement and compromise, Rieger and plaintiffs caused the contest to be discontinued, and agreed to permit defendant to open the safe-deposit box wherein money and papers of the deceased were deposited, and to take the same into his possession; that on October 23, 1902, the defendant filed in said county court in said matter his final account, wherein, in violation of said compromise and agreement, he sought to charge the sum of $171 as extra compensation over and above the percentage allowed him by law, the same being excessive, and no part of it having been earned, and also to claim and charge $1,423 as attorney fees, being $1,123 in excess of the amount agreed upon in said compromise, and that beyond this he charged the estate $40 for stenographer's fees, and the further sum of $15 for filing fees in a mandamus proceeding instituted in Multnomah County; that, in pursuance of defendant's application, an order was made by the county court, fixing Monday, November 24, 1902, at 9 o'clock A. M., for hearing and settling said account; that thereafter, and before the day fixed for settlement, when plaintiffs' attorneys inquired concerning the account, the defendant concealed from them the fact that it had been filed, whereby they were misled and deceived; that, for the further purpose of preventing plaintiffs and their attorneys from receiving knowledge of such filing, and to prevent them from

interposing objections to said account, he caused the notice of final settlement to be published in the *Salem Sentinel*, in an obscure part of the paper, in fine type, without appropriate headlines, and so spaced and placed that, without close inspection, it would readily be misconstrued, and taken to be explanatory matter accompanying a railroad and steamship time-table; that, relying upon defendant's good faith in keeping the agreement and compromise, and being deceived and misled by him as to the filing of said final account, and not knowing or having notice thereof, plaintiffs failed to appear or file objections thereto, as they would otherwise have done, and that the account was allowed and settled as filed; that plaintiffs have refused to accept the amount awarded them as their distributive shares of said estate, and that the delay in bringing this suit was caused by reason of plaintiffs being citizens and residents of Germany. A demurrer having been interposed to the complaint and sustained, a decree was rendered dismissing the suit, from which plaintiffs appeal.

REVERSED.

For appellants there was an oral argument by *Mr. Claire M. Inman* and *Mr. Arthur L. Veazie*, with a brief over the names of *F. A. Turner, C. M. Inman*, and *Gantenbein & Veazie* to this effect.

I. The jurisdiction of equity to grant relief against unconscionable judgments and decrees of all courts on an original bill to impeach, where they were obtained by fraud and imposition, or where a party has a meritorious defense and was prevented by fraud, accident, or mistake from maintaining such defense, without negligence on his part, was one of the most fruitful fields of original chancery jurisdiction, has long been unquestioned, and is now well established and continually exercised by courts of equity: 1 Black, Judgments, (2 ed.) § 356; 2 Pomeroy, Equity Juris.

(2 ed.) §.919; Story, Eq. Pldgs. (9 ed.), § 426; *Baker* v. *O'Riordan*, 65 Cal. 368, 370; *Handley* v. *Jackson*, 31 Or. 552, 555 (65 Am. St. Rep. 839, 50 Pac. 915).

II. Equity will grant relief against a decree of a probate court on final settlement of an administrator or executor where the decree was obtained by fraud, or heirs have been prevented from maintaining their objections by fraud, and has jurisdiction of an original suit for such purpose: *Reinhardt* v. *Gartrell*, 33 Ark. 727; *Griffith* v. *Godey*, 113 U. S. 93; 2 Woerner, Admr'n, (2 ed.) § 508; *Morrow* v. *Allison*, 39 Ala. 72; *Lucich* v. *Medin*, 3 Nev. 93 (93 Am. Dec. 376); *Speed* v. *Nelson*, 8 B. Mon. (Ky.) 507; *Stong* v. *Wilkson*, 14 Mo. 90, 91; *Jones* v. *Brinker*, 20 Mo. 55, 56; *State to use* v. *Roland*, 23 Mo. 95–98; *Picot* v. *Bates*, 47 Mo. 390; *Allen* v. *Clark*, 2 Blackf. 343, 344; *Brackenridge* v. *Holland*, 2 Blackf. 377, 380 (20 Am. Dec. 123); *Ray* v. *Doughty*, 67 U. S. (4 Black) 115; *Shegogg* v. *Perkins*, 34 Ark. 117, 127; *Benson* v. *Anderson*, 10 Utah 135, 138; *Johnson* v. *Waters*, 111 U. S. 667, 668; *Baker* v. *O'Riordan*, 65 Cal. 368; *Schweitzer* v. *Bonn*, 31 Atl. 24, 26; *Vanmeter* v. *Jones*, 2 Green, Ch. 520, 524; *Waldrom* v. *Waldrom*, 76 Ala. 285, 289; *Crain* v. *Crain*, 17 Tex. 85, 86; *Dobbin* v. *Bryan*, 5 Tex. 142; *Neylans* v. *Burge*, 14 Smed. & M. 200, 204; *Green* v. *Creighton*, 10 Smed. & M. 159, 163; *Sheetz* v. *Kirtley*, 62 Mo. 417, 420.

III. No equity jurisdiction has been conferred upon the county court by the organic or statute laws of the state, and after the term it has no power to set aside for fraud its decrees on final settlement, or to entertain a bill to impeach such final settlement on the ground of fraud: *Richardson's Guardianship*, 39 Or. 249 (64 Pac. 390); *Grady* v. *Hughes*, 64 Mich. 540, 546; 2 Woerner, Admr'n (2 ed.) § 507; *Watt* v. *Watt*, 37 Ala. 543, 547; *Roy* v. *Giles*, 4 Lea (Tenn.)

535; *Harvey* v. *Wait*, 10 Or. 117; *Conant's Estate*, 43 Or. 530 (73 Pac. 1018, 1019); B. & C. Comp. § 909.

IV. The county court as a court of probate, can exercise only such jurisdiction as has been specially conferred, together with those incidental powers necessary to a proper execution of those expressly granted. Jurisdiction of the summary remedy provided for in Section 103, B. & C Comp., is not specially conferred on the county court, and the county court can derive no authority from such section: B. & C. Comp. §§ 909, 911; *In re Underhill*, 117 N. Y. 471, 474; *In re Camp*, 126 N. Y, 377, 390; *Grady* v. *Hughes*, 64 Mich. 545; *Mathewson* v. *Sprague*, 16 Fed. Cas. No. 9,279; *Davidson* v. *Wampler*, — Mont. — (74 Pac. 82).

V. Such statutes limiting the time in which judgments may be set aside on motion or petition for mistake, surprise, excusable neglect, etc., have no application to the jurisdiction of equity to grant relief in an original suit on the ground of fraud where resort is first made to chancery for such relief, and has never been so held in this state : *Marsh* v. *Perrin*, 10 Or. 363; *Handley* v. *Jackson*, 31 Or. 552 (50 Pac. 915, 65 Am. St. Rep. 839); *Vanmeter* v. *Jones*, 2 Green's Ch. 523, 524; *Griffith* v. *Godey*, 113 U. S. 93; *Baker* v. *O'Riordan*, 65 Cal. 368; *Nealis* v. *Dicks*, 72 Ind. 375, 376; Pomeroy, Eq. Juris. (2 ed.) § 836; Black, Judgm. (2 ed.) § 356; *Irvine* v. *Leyh*, 102 Mo. 210, 211; *McNeil* v. *McNeil*, 78 Fed. 834, 835.

For respondent there was an oral argument by *Mr. Frank Holmes*, with a brief over the names of *Frank* and *W. H. Holmes* to this effect.

(1) Appellants do not show any reasonable excuse why they did not acquaint themselves with the proceedings in the case, and we insist that they are not entitled to relief from results occurring through their own negligence : *Oregon Ry. & Nav. Co.* v. *Gates*, 10 Or. 517; *Brown* v. *Alex-*

*ander*, 16 Or. 349, 353 (8 Am. St. Rep. 301 and note, 19 Pac. 9); *Galbraith* v. *Barnard*, 21 Or. 67, 69 (26 Pac. 1110); *Handley* v. *Jackson*, 31 Or. 552, 555 (65 Am. St. Rep. 839, 50 Pac. 915); *Belle* v. *Brown*, 37 Or. 588, 592 (61 Pac. 1024); *Johnson* v. *Templeton*, 60 Tex. 238; 1 Black, Judg. (2 ed.) § 356; Story, Eq. Pl. (9 ed.) § 428. Story, Eq. Juris. 1572.

(2) The county court still has jurisdiction over said estate, until the administrator performs the orders of the probate court and disburses all funds : *Hazelton* v. *Bogardus* 8 Wash. 102, 104; 2 Woerner, Admr'n § 506.

(3) Appellants had a remedy at law in the county court, by motion to secure same relief as sought for herein : B. & C. Comp. § 103; *Ladd* v. *Mason*, 10 Or. 312; *Thompson* v. *Connell*, 31 Or. 231, 235 (65 Am. St. Rep. 818, 48 Pac. 467); *Herren's Estate*, 40 Or. 90, 96 (66 Pac. 688); *Wilson's Guardianship*, 40 Or. 353, 356 (68 Pac. 393, 69 Pac. 439); *Conant's Estate*, 43 Or. 530 (73 Pac. 1018).

(4) Equity will not assume jurisdiction where party has legal remedy : *Snyder* v. *Vannoy*, 1 Or. 346; *Ferris* v. *Hayes*, 9 Or. 86; *Crews* v. *Richards*, 14 Or. 442, 445 (13 Pac. 67); *Helmick* v. *Davidson*, 18 Or. 456, 459 (23 Pac. 244); *Hughes* v. *Pratt*, 37 Or. 45 (60 Pac. 707); *Davis* v. *Hofer*, 38 Or. 150, 154 (63 Pac. 56); *Willis* v. *Crawford*, 38 Or. 522 (63 Pac. 985, 64 Pac. 866, 53 L. R. A. 904, note); *Hoover* v. *Bartlett*, 42 Or. 145 (70 Pac. 378); *Abernathy* v. *Orton*, 42 Or. 437, 441 (71 Pac. 327, 95 Am. St. Rep. 774, note, B. & C. Comp. § 390).

(5) When the facts existed in law before trial for which relief in equity is sought, and were known to the party suing in equity, or might have been known or discovered by the exercise of diligence, no redress can be had in equity : *Oregon Ry. & Nav. Co.* v. *Gates*, 10 Or. 517, 518 ; *Galbraith* v. *Barnard*, 21 Or. 69 (26 Pac. 1110); *Johnson* v. *Templeton*, 60 Tex. 238; Story, Eq. Juris. 1573.

(6) A party must not rely upon the representations of an adverse party. If such could be the case a solemn decree entered by a court of competent jurisdiction would have less force and effect and dignity than such alleged representations : *Townsend* v. *Cowels,* 31 Ala. 428 ; *Mock's Heirs* v. *Steele,* 34 Ala. 198 (73 Am. Dec. 455.)

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. The jurisdiction of a court of equity to interpose and set aside the order or decree of a county court approving and settling the final account of an administrator is first challenged by the demurrer. The especial ground for invoking equitable jurisdiction is fraud in procuring the order settling the account, consisting in the disregard and violation on the part of the administrator of the alleged compromise agreement, whereby he agreed that he would claim no extra compensation for his own services and no more than $300 as attorney fees and charges. It is the undoubted province of equity, long maintained, to set aside and enjoin the execution or enforcement of judgments at law and of its own decrees, when they have been procured by fraud, unaccompanied by negligence, laches, or fault on the part of him who invokes the interposition of the remedy. This general statement of the law will hardly be controverted: 3 Pomeroy, Eq. § 1364; 1 Black, Judg. (2 ed.) § 321; *Phillips* v. *Negley,* 117 U. S. 665 (6 Sup. Ct. 901); *Hayden* v. *Hayden,* 46 Cal. 332; *Gates* v. *Steele,* 58 Conn. 316 (20 Atl. 474, 18 Am. St. Rep. 268); *Brooks* v. *Twitchell,* 182 Mass. 443 (65 N. E. 843, 94 Am. St. Rep. 662). It is earnestly and strongly controverted by respondent, however, that the rule has application to probate proceedings, and especially under our own procedure, where the county court is given the exclusive jurisdiction, in the first instance, pertaining to a court of probate, the statute

enumerating, among other powers, to grant and revoke letters testamentary of administration and of guardianship, and to direct and control the conduct and settle the accounts of executors, administrators, and guardians: B. & C. Comp. § 911. Speaking generally upon the subject, Mr. Woerner says: "In dealing with the judgments and decrees of probate courts upon the final settlements of executors and administrators precisely as with the judgments of other courts, courts of chancery review, enjoin, or annul them upon application of injured parties for fraud, and in some cases for mistake, or where the matter complained of may have arisen either from fraud or mistake, or constitutes constructive fraud:" 2 Woerner, Am. Law Adm. (2 ed.) § 508. So it was held in *Griffith* v. *Godey*, 113 U. S. 89 (5 Sup. Ct. 383), a suit in equity to surcharge the account of an administrator, that a probate settlement of an administrator's account does not conclude as to property fraudulently withheld from it; and, in Nevada (*Lucich* v. *Medin*, 3 Nev. 93, 93 Am. Dec. 376), that "a court of equity certainly has the power to inquire into the final account of an executor, and proceed to hear evidence to falsify and surcharge the account for fraud, and to render such decree as is necessary to do equity in the case"; and again, in Illinois (*Anderson* v. *Anderson*, 178 Ill. 160, 52 N. E. 1038), that a judgment of the county court on final settlement between the executor and the beneficiaries may be impeached in equity for fraud. See, also, *Waldrom* v. *Waldrom*, 76 Ala. 285, *Benson* v. *Anderson*, 10 Utah, 135 (37 Pac. 256), and *Johnson* v. *Waters*, 111 U. S. 640 (4 Sup. Ct. 619), as to the general doctrine applied to probate matters.

But the doctrine is applied as well in Arkansas (*Reinhardt* v. *Gartrell*, 33 Ark. 727), where the statute, like our own, has accorded exclusive original jurisdiction in the matter of the administration of the estates of decedents

to the probate courts. Mr. Justice EAKIN, rendering the opinion in that case, says: "The courts of chancery have no power to take such cases out of the probate courts, for the purpose of proceeding with the administration. But their power and functions to relieve against fraud, accident, mistake, or impending irremediable mischief is universal, extending over suitors in all courts, and over the decrees in those courts obtained by fraud, or rendered under circumstances which render it inequitable that they should be enforced. Hence any frauds in the settlements of administrators or executors may be corrected. When that is done, if there be still a necessity for continued proceedings in the course of administration, such proceeding should go on, in the probate court, upon the basis of the reformed settlement." To the same purpose, see *Shegogg* v. *Perkins*, 34 Ark. 117. Indeed, there can be no reason why the rule should not be applied in probate matters, where the order and decree complained of is in effect final, and not merely interlocutory, with the same efficacy as to the judgments and decrees of courts of law and equity possessing general jurisdiction within their peculiar province. The circuit courts of the state possess exclusive jurisdiction in all matters not accorded to the inferior courts, yet it is competent for equity to interpose and set aside or enjoin the enforcement of their judgments at law or decrees in equity where such judgments or decrees have been superinduced by fraud, and the complainant is free from inattention, negligence, and fault upon his part. So that the fact that the county court is accorded exclusive jurisdiction in the first instance has no peculiar emphasis or force to differentiate its final orders or decrees from those of any court of record possessing exclusive jurisdiction within its compass. The equitable remedy of which we are now treating has its just limitations, however. It cannot be utilized for the correction of errors and

irregularities, and, where the party has had an opportunity to be heard in the original proceeding and to have the matters revised on appeal, but has neglected to avail himself thereof, he is not entitled to redress in the equitable forum: *Galbraith* v. *Barnard,* 21 Or. 67 (26 Pac. 1110); *Handley* v. *Jackson,* 31 Or. 552 (50 Pac. 915, 65 Am. St. Rep. 839); *Conant's Estate,* 43 Or. 530 (73 Pac. 1018).

2. It is further urged that the plaintiffs had a complete remedy in the county court to open up the order of final settlement, under Section 103, B. & C. Comp., providing for the relief of a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. It may well be doubted whether such fraud as is here complained of is embraced within the purview of that section, and the question is made whether it was intended to apply in probate proceedings. But, however this may be, the remedy was not invoked, nor an adjudication had with reference to it, so that it did not preclude plaintiffs from proceeding in equity. The remedy thereby accorded, in whatsoever capacity it may be employed, is equitable in character, and we have held that when invoked in a proper case the party will be precluded by the adjudication from applying to a court of equity for relief of the same nature based upon grounds identical with those there urged : *Thompson* v. *Connell,* 31 Or. 231 (48 Pac. 467, 65 Am. St. Rep. 818). Hence the statute is not operative as an estoppel here, in any view we may take of its application in county court proceedings.

3. Again, it is suggested that the county court has not fully disposed of the matter, the distribution not having been made, the receipts filed, or the administrator finally discharged. But we think this is not controlling, as the order settling the account was the final adjudication respecting it. The rights of the respective parties were then ascertained and determined, leaving the administrator

nothing to do but to comply with the directions of the court, whereupon he would be entitled to his discharge. In view of these considerations, we are constrained to hold that a court of equity has jurisdiction of the cause.

4. The complaint is also challenged upon the ground that it does not state facts sufficient to constitute a cause of suit; but we are impressed that it does. The fraud complained of was such, it is true, that the heirs might have set it up before the county court by way of objections to the final account, if they had known that the account was filed and the time fixed for settling the same, but of this they were not apprised. The fraud complained of consists in the administrator's failure to keep and observe the stipulations of the compromise agreement upon his part. The heirs had a right to assume that he would faithfully observe them, and were not called upon to keep a check upon his actions and take especial notice of the proceedings had in that regard. While it may be conceded, without deciding the question now, that the notice published was sufficient to inform them constructively of the filing of the final account, and consequently of the administrator's breach of his agreement, yet, nevertheless, they allege that they had no actual notice of it until after the court had settled the account, and were thereby prevented from making the objections which they were entitled to interpose at the hearing. Under such allegations, it was not laches on the part of the heirs that they were not present at the hearing. Furthermore, it is averred that their attorneys on two occasions, after the account had been actually filed, and before the time set for hearing, inquired concerning it, and were led to believe by the administrator that it had not yet been filed, thus showing positive interposition to mislead interested parties, and thus to conceal the intended fraud.

5. Nor does the fact that plaintiffs did not institute the

present suit until more than eight months after the entry
of the order of final settlement constitute such laches as to
preclude them from insisting upon the remedy invoked.
. The decree of the trial court will therefore be reversed,
the demurrer to the complaint overruled, and the cause
remanded for such further proceedings as may seem ap-
propriate.        REVERSED.

---

Decided 21 January, 1904.